**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Barry BLEIKE, Defendant–Appellant.**

**No. 91–2143.**

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1991.

Ronnie G. Harrison, Houston, Tex. (court-appointed), for defendant-appellant.

Peggy M. Ronca, Paula Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge.

This is Barry Bleike's second appeal of the sentence imposed pursuant to his plea of guilty to conspiracy to commit violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. On the first, this court remanded for resentencing. Bleike now contends, *inter alia*, that the district court erred by failing to award him credit for time served in pretrial detention and in increasing his criminal history category based on a state court conviction subsequent to the initial sentencing. We AFFIRM.

## I.

Bleike was part of a cocaine supply network in the Bryan–College Station, Texas, area. His involvement included the distribution of cocaine for Leoncio Espaillat, the ringleader, and the attempted theft of four new vehicles in exchange for cocaine. In October 1988, Bleike and four co-conspirators were arrested while in the process of trying to steal the vehicles. He was released on state bond, and, in November 1988, was indicted on a state charge of organized criminal activity related to the attempted theft.

While free on bond, Bleike was implicated in the early November 1988 theft of an automobile from a shopping center parking lot in the Bryan–College Station area. On February 8, 1989, he was arrested on a state charge of automobile theft and confined in the Brazos County (Texas) jail.

On February 16, 1989, a 61–count federal indictment (superseding a January 1989 indictment) was filed against Bleike and nine codefendants charging RICO conspiracy and various RICO, narcotics and car theft offenses. That same day, the government moved that Bleike be released from state to federal custody, pending disposition of the federal charges. A detention hearing was held on February 28, and Bleike was committed to the custody of the Attorney General pending trial.

In April 1989, a second superseding indictment (64–counts) was filed against Bleike and twelve codefendants. Bleike was charged in 11 counts. In May 1989, he pleaded guilty to one count of conspiracy (from 1985 through January 1989) to commit RICO violations. Pursuant to Fed. R.Crim.P. 11(e)(1)(B), he entered into a plea agreement in which, in exchange for Bleike's plea, the government agreed, *inter alia*, to (1) recommend that his guidelines offense level be based solely on the amount of cocaine Bleike personally distributed; (2) dismiss the remaining counts against him; and (3) recommend that any sentence Bleike received run concurrent to any sen-

tence he might receive in related stolen car offenses then pending in state court.

In calculating the recommended base offense level for the October 4, 1989, presentence investigation report (PSI), the probation officer included in the offense conduct 84 grams of cocaine Bleike had distributed, plus 50 ounces which he was to receive for the theft of the four new vehicles. This resulted in a base offense level of 26. Because he had no criminal convictions, he had a criminal history category of I. However, the PSI noted that state criminal charges were pending against Bleike for the attempted vehicle thefts in October 1988 and the separate vehicle theft in November 1988. The PSI also noted:

> According to the FBI case agent, on February 7, 1989, Barry Bleike was involved in the offense of stealing a motorcycle in Pasadena, Texas, which he traded to Leo Espaillat later for three ounces of cocaine. Bleike reportedly was identified by the victim. On June 15, 1989, this matter was filed under Cause No. 533538 in the 209th District Court of Harris County [Texas]. The next court setting is December 19, 1989.

Bleike filed objections to the PSI, contending that his base offense level should be 19, because the 50 ounces of cocaine were to be excluded in accordance with his plea agreement. The government agreed. A sentencing hearing was held in December 1989. Although the district court agreed not to consider the 50 ounces, it set Bleike's base offense level at 24, rather than 19. The district court also deducted two levels for acceptance of responsibility and departed downward by at least five levels because of Bleike's addiction to cocaine.[1] Bleike was sentenced, *inter alia*, to 24 months' imprisonment.

Bleike appealed. In September 1990, this court vacated the sentence and remanded, because the district court had miscalculated the base offense level. 915 F.2d 692 (5th Cir.1990) (unpublished opinion).

After remand, a sentencing hearing was held in January 1991. The district court calculated the offense level at 17 (19 less two-level reduction for acceptance of responsibility), which, at a criminal history category of I, would have resulted in a sentencing range of 24 to 30 months. But, noting that Bleike had been convicted on the motorcycle theft charge pending at the time of his first sentencing, the district court increased his criminal history category to II, resulting in a range of 27 to 33 months. The district court sentenced him to 30 months' imprisonment, an increase of six months over the first sentence. As on the first sentence, the district judge imposed a three-year supervised release term and a $50 assessment. This appeal followed.[2]

## II.

Bleike contends that the district court erred in (1) not granting him credit for time served in pretrial federal custody; (2) failing to order a revised PSI to include information concerning the motorcycle theft conviction, thereby depriving him of notice

---

1. The record does not reveal the precise extent of the downward departure. However, as noted by this court on Bleike's first appeal, and because his 24-month sentence is consistent with an offense level no greater than 17 (criminal history category I), the departure would have to have been at least five levels. *See* U.S.S.G., Sentencing Table. Moreover, during Bleike's sentencing hearing after remand, his counsel noted that the district court had granted a five-level departure.

2. On the day this appeal was orally argued, Bleike moved to supplement the record on appeal to include the following: (1) a September 10, 1991, letter from the Texas Department of Criminal Justice to the Federal Correctional Institution concerning Bleike's April 1990 incarceration to begin a 15-year sentence on a state charge of organized criminal activity; (2) a state writ of habeas corpus ad prosequendum, commanding Bleike's presence for trial in June 1989; (3) minutes of Bleike's plea hearing in state court concerning his December 1989 guilty plea and sentence to the motorcycle theft charge; and (4) Bleike's waiver of rights and confession to the motorcycle theft charge, which reflects that the offense took place on December 7, 1988 (not February 7, 1989, as stated in the PSI). At oral argument, the court directed the parties to argue as if the motion had been granted, and further instructed them to file supplemental briefs concerning the effect of these documents. The motion is GRANTED.

of the court's intent to rely on that conviction; (3) denying him a meaningful opportunity to raise objections at resentencing by cutting off his counsel's attempt to do so at the conclusion of the hearing; (4) considering the conviction a "prior conviction" under U.S.S.G. § 4A1.2; and (5) failing to order his federal sentence to run concurrent to his sentence in the related state car theft cases, as contemplated by his plea agreement with the government.[3]

### A.

Bleike contends that 18 U.S.C. § 3585 requires that the district court award him credit for the more than 10 months that he claims to have served in federal custody prior to sentencing. The government maintains that Bleike must first exhaust administrative remedies through the Attorney General/Bureau of Prisons before such a request can be considered by the district court. Credit for time served in presentencing custody for crimes committed prior to November 1, 1987, was governed by former 18 U.S.C. § 3568, which was repealed as part of the Sentencing Reform Act of 1984, Pub.L. 98–473, tit. II, c. II, § 212(a)(2), 98 Stat.1987 (1984), and replaced with 18 U.S.C. § 3585. Section 3585 became effective for crimes committed on or after November 1, 1987, and governs Bleike's claim for credit.

Former § 3568 provided in part:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence was imposed.

The Attorney General delegated this duty to the Bureau of Prisons. *See* 28 C.F.R. § 0.96 (1991).[4] A prisoner seeking a credit determination under former § 3568 was, therefore, required to exhaust administrative remedies with the Bureau of Prisons before seeking judicial relief. *See, e.g., United States v. Brown,* 753 F.2d 455, 456 (5th Cir.1985) (citing *United States v. Mathis,* 689 F.2d 1364, 1365 (11th Cir.1982) (relying on Fifth Circuit authority)).

In contrast, while § 3585 addresses awarding credit, it does not designate authority to make this determination, and, moreover, deletes any reference to the Attorney General. It provides:

(a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which sentence was imposed;

---

**3.** He originally contended also that the district court erred in using the state motorcycle theft conviction to increase his criminal history category, when nothing in the record supported the finding that he had such a conviction. As noted, Bleike has been granted leave to supplement the record on appeal to include documents relating to that conviction. *See supra,* note 2. These documents establish that the finding that Bleike has been so convicted is correct. Accordingly, this contention is moot.

**4.** 28 C.F.R. § 0.96 states that "[t]he Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons ... charged with or convicted of offenses against the United States...." Determination of credit for time served in presentencing custody relates to the commitment of federal prisoners, and is, therefore, included within this delegation of authority. *United States v. Lucas,* 898 F.2d 1554, 1555–56 n. 2 (11th Cir.1990).

that has not been credited against another sentence.

This has resulted in a split involving seven Circuits concerning the exhaustion of administrative remedies *vel non*, with the division occurring over whether the Attorney General or the district courts possess authority to compute § 3585 credit to the exclusion of the other, or whether both possess such authority concurrently.

The Seventh and Eleventh, and possibly the Tenth, Circuits hold that the Attorney General continues to retain initial responsibility for calculating the credit. *See United States v. Brumbaugh*, 909 F.2d 289, 291 (7th Cir.1990) ("the change in [statutory] language does not signal that Congress intended to relieve the Attorney General from making this calculation"); *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir.1990). *Accord United States v. Herrera*, 931 F.2d 761, 763–64 (11th Cir.1991), *petition for cert. filed*, (U.S. July 8, 1991) (No. 91–5142) (following Lucas). As noted, the Tenth may agree. *See United States v. Woods*, 888 F.2d 653, 654 (10th Cir.1989), *cert. denied*, 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990) (holding that Attorney General has the initial authority to determine the credit, although without discussion of change in statutory language). *But see United States v. Richardson*, 901 F.2d 867, 870 (10th Cir.1990) (remanded to district court for determination of credit due under § 3585 without discussion of Attorney General's authority *vel non* or citation to *Woods*).

The Eighth and Ninth Circuits, however, hold that the change in statutory language manifests congressional intent to withdraw exclusive authority from the Attorney General and to vest it concurrently in that officer and the district courts. *See United States v. Beston*, 936 F.2d 361, 363 (8th Cir.1991); *United States v. Chalker*, 915 F.2d 1254, 1258 (9th Cir.1990) ("by failing to specify to whom such power was vested, Congress intended the Attorney General

and the district courts to have concurrent authority to grant credit for time served"). As for the First Circuit, *see United States v. Zackular*, 945 F.2d 423, 424 (1st Cir. 1991) (agreeing that the change in statutory language manifests congressional intent to vest power to credit sentences in the district courts; expressly declining, however, to determine whether that power is shared concurrently with the Attorney General).

In contrast, the Sixth Circuit holds that § 3585's deletion of the reference to the Attorney General reflects Congress' intent to vest credit authority exclusively in the district court. *See United States v. Wilson*, 916 F.2d 1115, 1118 (6th Cir.1990), *cert. granted*, —— U.S. ——, 112 S.Ct. 48, 116 L.Ed.2d 26 (1991). The Supreme Court will hear oral argument on January 15, 1992.[5]

As always, we must first determine whether this issue is properly before us. The government maintains that it was not raised in the district court; Bleike contends that error was preserved (1) during resentencing and (2) in his objections to the PSI. During resentencing, the following exchange took place:

> THE COURT: ... This case is back for resentencing.... Mr. Harrison, is there anything additional you want to state in behalf of your client at this time?

> MR. HARRISON [defense counsel]: Judge, ... we wanted to make sure the Court understands the time served by Mr. Bleike in the state and Federal jurisdiction. I don't know if it's appropriate at this time or not, Your Honor.

> \*　　\*　　\*　　\*　　\*　　\*

> MR. LEWIS [government counsel]: The original plea recommendation was that ... his Federal sentence would run concurrent to the time that he was going to get assessed in the Brazos County car theft episode that he was involved in.

**5.** The Court will consider the following question: "Is computation of sentence credit, under federal statute prescribing that such credit is to be given for time defendant spends in official detention before beginning service of his sentence, 18 USC 3585(b), to be made by district court at time of sentencing or by attorney general after defendant begins to serve his sentence?" 60 U.S.L.W. 3217, 3218 (U.S. Oct. 8, 1991).

He spent about seven months in state custody on that Brazos County car theft ring case, including his time at TDC. And so in terms of effecting that part of the plea recommendation, we would ask that whatever time this Court gives this defendant ... in this resentencing, that it subtract seven months from that spread of months it would give the defendant, in order to effect that portion of the original plea recommendation.

\*     \*     \*     \*     \*     \*

THE COURT: .... [T]hat's the recommendation, is that correct?

MR. LEWIS: As to the concurrency.

\*     \*     \*     \*     \*     \*

THE COURT: .... What about the defense position?

MR. HARRISON: Your Honor, ... we would ask the Court to take notice of the fact that Mr. Bleike has been a Federal prisoner as of on or about February 13, 1989, and he was in Federal custody until March 23, 1990, when he was in fact sentenced in Brazos County, Your Honor.

And then his custody again picked up in the Federal jurisdiction on October 2, 1990. And we would ask that he get credit for that time served.

\*     \*     \*     \*     \*     \*

THE COURT: All right. I will not assess any concurrent sentence....

Additionally, in his objections to the PSI before the first sentence, Bleike requested that "the Court grant him credit for time served in Harris County Jail from on or about February 1989 to the present."

Bleike requested that the district court grant him credit for time served in federal custody. The district court, however, never ruled on the request; and Bleike neglected to bring this to its attention. The government contends that (1) his failure to do so constitutes a waiver, and (2) the district court did not understand Bleike to

be making a separate request for an award of credit, because it was made in the context of the rejected concurrent sentence recommendation. In any event, the credit issue was not addressed by the district court. Accordingly, the government's contention that Bleike must first exhaust administrative remedies was not presented to the district court.

Issues raised for the first time on appeal are reviewed only for plain error. Fed. R.Crim.P. 52(b). " 'Plain error' is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991) (citation omitted). "It is a mistake so fundamental that it constitutes a 'miscarriage of justice.' " *Id.* (citations omitted). "Alternatively stated, when a new factual or legal issue is raised for the first time on appeal, plain error occurs where our failure to consider the question results in 'manifest injustice.' " *Id.* (citation omitted). Calculation of the credit, if any, primarily involves factual determinations not to be made in the first instance by an appellate court. The government advises that Bleike is scheduled for release on December 4, 1992.[6] Moreover, the Supreme Court will address this issue in the near future. In sum, our not addressing this issue will not result in manifest injustice; we decline to do so.[7]

**B.**

Bleike next contends that the district court erred in using his post-first federal sentencing state conviction (motorcycle theft) to increase his guideline criminal history category. The district court stated:

At criminal history category [I], the guideline range is 24 to 30 months. The Court has considered the defendant's

---

6. At oral argument, we were advised that the Bureau of Prisons was in the process of establishing Bleike's release date.

7. Our not doing so does not preclude Bleike from seeking review of the release date in subsequent administrative and habeas proceedings, pursuant to the procedure outlined by the government at oral argument.

subsequent [state] conviction in case No. 533538 ... which was pending disposition at the time of sentencing on the instant offense on December 15, 1989.

The defendant was sentenced to five months custody, Harris County jail, on December 19, 1989, on a conviction of theft. The Court finds the defendant's criminal history point score is 2, and criminal history category is [II].

The applicable guideline range at offense level 17 and criminal history category [II] is 27 to 33 months. The Court finds that had the defendant's state conviction in cause No. 533538 been realized at the time of original sentencing, the Court would have sentenced this defendant to a 30 month sentence rather than a 24 month sentence.

### 1.

█ Bleike concedes that he did not object in district court to use of this conviction in his resentencing. Absent such objection, we review this for plain error. Bleike maintains that he should not be held responsible for his failure to object because: (1) the district court failed to order preparation of a revised PSI, thereby denying him notice that the conviction would be considered; and (2) he was denied a meaningful opportunity to object, because the district judge cut off any opportunity to do so at the conclusion of the sentencing hearing. Under Fed.R.Crim.P. 32(a)(1), "[a] criminal defendant must be provided notice of any facts that may affect his sentence and a meaningful opportunity to respond." [8] *United States v. George*, 911 F.2d 1028, 1029 (5th Cir.1990).

**8.** The Rule provides in part:
Prior to the sentencing hearing, the court shall provide the counsel for the defendant and the attorney for the Government with notice of the probation officer's determination, pursuant to the provisions of subdivision (c)(2)(B), of the sentencing classifications and sentencing guideline range believed to be applicable to the case. At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.
Fed.R.Crim.P. 32(a)(1).

Bleike cites no authority requiring preparation of a revised PSI when a case is remanded for resentencing, nor do we find, under the facts of this case, that one was necessary. In a section captioned "THE DEFENDANT'S CRIMINAL HISTORY", the PSI related that the state motorcycle charge was then pending and that the next state court action on that charge would occur on December 19, 1989, four days after Bleike's first sentencing hearing. On December 19, Bleike pleaded guilty to the state charge.

Bleike was on notice that the district court was aware of the pending charge and that it was included as part of his criminal history. The *only* information not included in the PSI was the fact of his conviction—obviously, a fact of which Bleike was more than well aware. Bleike could have hardly been surprised by this fact. No further notice was required.

We turn next to Bleike's contention that he was denied a meaningful opportunity to object. Bleike was not prevented from raising any issue he chose, including related to use of his state conviction. At the conclusion of the hearing, the district judge asked if he had anything further and allowed him to consult with his attorney. His counsel then asked about the lack of a downward departure for Bleike's cocaine addiction (an issue not raised on appeal). Bleike's counsel gave no indication that anything further needed to be addressed.[9]

Moreover, Bleike has not even asserted, much less established, that his trial counsel *intended* to object to use of the state con-

**9.** The exchange was as follows:
THE COURT: Anything further from the defense?
MR. HARRISON: Can I have a moment, Your Honor, with my client?
THE COURT: Yes, sir.
MR. HARRISON: Your Honor, the Court in its prior sentencing had given Mr. Bleike a five level reduction for his cocaine addiction. Is the Court not taking that into account? That was done—
THE COURT: I have made my ruling. Thank you. We will stand adjourned.
MR. HARRISON: Thank you, Your Honor.

viction.[10] If there were, in fact, additional issues to raise, it was incumbent upon counsel to inform the district judge.

### 2.

As noted, Bleike pleaded guilty to conspiracy to commit RICO violations between 1985 and January 13, 1989, which involved the theft of motor vehicles in exchange for cocaine. Bleike contends that his state conviction was for conduct that was part of this federal offense, and that, therefore, the district court erred in considering it a "prior conviction" under U.S.S.G. § 4A1.2.[11] He bases this contention on grounds that: (1) the stolen motorcycle was traded to Espaillat for cocaine (consistent with the purpose of the conspiracy), and (2) the PSI erroneously states that the motorcycle theft occurred on February 7, 1989, a date outside the conspiracy period, when it actually occurred on December 7, 1988, within the period. Bleike claims this latter contention is supported by documents relating to his guilty plea and conviction in state court (submitted in the supplement to the record on appeal), which recite that the motorcycle theft occurred on December 7, 1988.

■ Because Bleike failed to raise this issue at resentencing, we review it only for plain error. "The burden of showing plain error is a heavy one, ... and this court will notice plain error only in exceptional circumstances." *United States v. Wicker,* 933 F.2d 284, 291 (5th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991) (citations omitted). This court has held that "[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *Lopez,* 923 F.2d at 50. "For a fact issue to be properly asserted [under plain error review], it

must be one arising outside of the district court's power to resolve." *Id.*

■ Whether Bleike's state conviction involved conduct that was part of his federal offense is a factual issue that was within the power of the district court to resolve. Indeed, the documents he submitted on appeal, which raise this issue, were never presented to the district court. As this court stated in *Lopez:*

> The plain error doctrine requires parties to raise objections at procedurally opportune junctures as early in the judicial process as possible.... It [is] incumbent upon [a defendant] to make and factually develop in the district court all arguments concerning application of the guidelines he believe[s] might persuade the judge to alter the sentence he ... challenges.

*Id.* Bleike had more than ample opportunity to develop this point in district court; it was incumbent upon him to do so. There is no plain error. This is especially true because the 30 months' sentence was available in any event (upper end), had the district court not counted the state conviction as a prior conviction and therefore held the criminal history category at I.

### C.

■ Finally, Bleike contends that the district court erred by not ordering his federal sentence to run concurrent with his state sentence, as contemplated by his plea agreement. However, he acknowledges that the government's sentencing recommendation was made under Fed.R.Crim.P. 11(e)(1)(B), which states that the district court is not bound by the recommendation.[12] Further, the district judge admonished Bleike that the court did not have to accept his plea arrangement and that Bleike would have to accept whatever sen-

---

**10.** Bleike has different counsel on appeal.

**11.** "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1).

**12.** "The attorney for the government and the attorney for the defendant ... may engage in

discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty ..., the attorney for the government will ... make a recommendation ... for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." Fed.R.Crim.P. 11(e)(1)(B).

tence he was given. Bleike acknowledged this admonition. It is well-settled that a sentencing court is not bound by the government's recommendations in such a plea agreement. *E.g., United States v. Shacklett,* 921 F.2d 580, 583 n. 3 (5th Cir. 1991); *United States v. Medina–Saldana,* 911 F.2d 1023, 1024 (5th Cir.1990).

### III.

For the foregoing reasons, the sentence is

AFFIRMED.