PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/07/99
THOMAS  K. KAHN
CLERK

--------------------
No. 98-2660
--------------------
D.C. Docket No. 97-490-CR-T-23B

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH MELVIN,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Middle District of Florida
--------------------
(September 7, 1999)

Before DUBINA and HULL, Circuit Judges, and HOWARD*, Senior District
Judge.

HOWARD, Senior District Judge:

_____
* Honorable Alex T. Howard, Jr., Senior U.S. District Judge for the Southern
District of Alabama, sitting by designation.

Kenneth Melvin was charged by information and pleaded guilty to trafficking in fraudulently obtained credit card accounts, in violation of 18 U.S.C. § 1029(A)(2), possession of fifteen or more unauthorized credit card accounts with the intent to defraud, in violation of 18 U.S.C. § 1029(A)(3), and social security fraud, in violation of 42 U.S.C. § 408(a)(7)(B). Melvin's charges arose from a scheme wherein Melvin obtained false credit cards, bank accounts and identification cards primarily in the names of hospitalized children. Melvin illegally obtained the personal information and social security numbers of these children through his employment at the hospital in which the children were receiving treatment.

After a sentencing hearing, the district court determined that Melvin had an adjusted offense level of fifteen and a criminal history category of II, resulting in a guidelines imprisonment range of 21 to 27 months. However, the district court departed upward by fifteen levels to reach an imprisonment range of 108 to 135 months. The district court found that Melvin's crimes were "morally reprehensible in the extreme" and departed upward because of the large number and vulnerable nature of the child victims. The court sentenced Melvin to 120 months imprisonment on counts one and two, and twenty-one months on count three, all to be served concurrently.

Melvin appeals his sentence arguing (1) that the district court improperly departed from the guidelines, and (2) that the extent and method of the district court's departure were unreasonable.  We affirm.

## I.  BACKGROUND

Melvin was employed in the housekeeping department of All Children's Hospital in Tampa, Florida from May to September 1997.  In June 1997 a private mailbox provider notified the Postal Inspector's Office that Melvin was receiving credit cards in various names at a rented mailbox.  An initial investigation revealed that Melvin maintained two apartments, a post office box at the main post office in addition to the rented box, a rented storage unit and several bank accounts under different names.  After continued surveillance, Melvin was arrested and  Melvin's apartment and storage unit were searched pursuant to a valid warrant.

The search revealed that Melvin possessed the personal information of 135 individuals including birth dates and social security numbers.  Of these individuals, 112 had been juvenile patients -- ranging in age from six months to fifteen years old -- at the All Children's Hospital.  Using the information he obtained, Melvin procured thirty-six unauthorized credit card accounts.  Thirty-five of these accounts were issued by First USA Bank, which incurred a loss of $17,307.08 because of Melvin's charges.  Sears Roebuck & Co. issued a single account and

3

incurred a loss of $1,066.34. Melvin also fraudulently obtained telephone service from GTE in the names of two individuals from which GTE suffered a loss of $1,587.73. In addition, Melvin used the stolen personal information to obtain identification cards in the names of other persons with Melvin's picture. Using the information, he obtained identification cards from Virginia, New York, New Jersey, Florida and London, England.

Melvin was charged by information and pleaded guilty pursuant to a plea agreement with the government. At sentencing, the district court determined that under the United States Sentencing Guidelines, Melvin's adjusted offense level was fifteen with a criminal history level of II, resulting in a Guidelines range of fifteen to twenty-one months. In arriving at its calculation, the court initially determined that Melvin's base offense level was six under U.S.S.G. § 2F1.1, which governs offenses involving fraud and deceit. The court added three levels to the base offense level for losses greater than $10,000 but less than $20,000, pursuant to U.S.S.G. § 2F1.1(b)(1)(D). The court added two levels for more than minimal planning and multiple victims under U.S.S.G. § 2F1.1(b)(2)(A) and (B). The court then again adjusted Melvin's offense level upward by two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because Melvin had provided a false name

upon his arrest and to the Magistrate Judge in court proceedings. The court denied the government's request for an abuse-of-trust enhancement.

Following the adjustments, the court announced that it was contemplating a Guidelines departure. After announcing its intent to depart, the court rescheduled the sentencing to the following week to give Melvin the opportunity to prepare objections to the anticipated departure. At the subsequent sentencing hearing, the government requested that the district court depart upward because the Guidelines did not take into consideration the extraordinarily large number of children whom Melvin had targeted as victims. The court heard testimony from the parents of two of the children -- a four-month old infant and a ten-year old child -- Melvin had victimized. One parent testified that because of Melvin's offense, his daughter had received a bad credit rating, and that the family had experienced difficulty with the credit bureaus in attempting to clear her credit history. This parent testified that he feared that his daughter's credit history may never be corrected and that the credit problems would affect her for the rest of her life.

After hearing the testimony, the district judge adjusted Melvin's sentence upward by two levels pursuant to U.S.S.G. § 3A1.1 because the victims of the offense were vulnerable. The judge then announced that he was departing upward

from the Guidelines by fifteen levels pursuant to U.S.S.G. § 5K2.0.  The court

stated:

> [T]his offense is morally reprehensible in the extreme.  It appears to have systematically victimized in this instance approximately 135 people, infants each one, hospitalized and presumably ill or otherwise frail and tender, in addition to being of tender years, unable to act in the preservation of their own interest, and both the children and their parents unable to act effectively to preserve their interests until the damage is already done without their individual or collective knowledge and of course without their consent.  These victims are in effect especially vulnerable because they are, by the nature of their hospitalization and their frailty, captive victims.  So I will simply raise the offense level fifteen to offense level thirty.

Melvin argues that the district court's bases for departing were already taken

into consideration in calculating his imprisonment range under the Guidelines.

Melvin also argues that even if departure was appropriate, the extent and method of

the departure were unreasonable.

## II. DISCUSSION

We review a district court's decision to depart from the Guidelines for an

abuse of discretion.  *See Koon v. United States*, 518 U.S. 81, 100 (1996).  A district

court's findings of fact are afforded substantial deference.  *See id.* at 98.  "The

abuse of discretion standard includes review to determine that the discretion was

not guided by erroneous legal conclusions."  *Id.* at 100.

A district court must impose a sentence within the Sentencing Guidelines unless the court determines "that there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b).

The Guidelines Manual explains:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where the conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b).

Before departing from the Guidelines, a district court must therefore determine that an aggravating factor exists that places the case outside of the Guidelines' heartland.  *See Koon*, 518 at U.S. 98.  Whether a case is unusual enough to fall outside of the heartland is determined in large part by comparison with other Guidelines cases.  *See id.*  Because the district courts see so many Guidelines cases, district courts have an institutional advantage over appellate courts in determining whether a case is outside the heartland, and thus their decisions are entitled to substantial deference.  *See id.*

The examination of whether a factor is an appropriate basis for departure is limited to (1) whether the Sentencing Commission has prohibited consideration of the factor in departing from the Guidelines, and (2) whether the factor as occurring in the particular instance takes the case outside of the heartland of the applicable guideline. *See id.* at 109.

If a factor is forbidden, *see e.g.*, U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion, and socioeconomic status), a district court cannot use the factor to depart. *See id.* at 96-97. If a factor is encouraged, *see e.g.*, U.S.S.G. § 5K2.1 (offense causes death), a court may depart on the basis of the factor unless the Guidelines already take the factor into account. *See id.* at 96. If a factor is discouraged, *see e.g.*, U.S.S.G. § 5H1.2 (education and vocational skills), or is an encouraged factor already taken into account by the applicable guideline, *see e.g.*, U.S.S.G. § 5K2.7 (disruption of governmental function in bribery offense), the court may depart only if the factor is "present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present." *See id.* A sentencing court may depart on the basis of a factor not addressed by the Sentencing Commission if the court determines that the factor takes the case out of the Guideline's heartland after considering the "'structure and theory of both the relevant individual guidelines and the Guidelines taken as a

whole.'" *See id.* (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993)).

In the instant case, the district court found that Melvin victimized 135 individuals, most of whom were hospitalized children.  The court found that these children were particularly vulnerable because of their age and their infirmities. Melvin argues that the district court erred in departing from the Guidelines based on the number and vulnerability of the victims.  According to Melvin, these factors were already considered in the initial calculation of his sentence under the Guidelines and therefore were in impermissible basis on which to depart.

## A.  Multiple Victims

The Guidelines section covering fraud or deceit offenses, U.S.S.G § 2F1.1(b)(2), provides a two-level increase for offenses that (A) involved more than minimal planning, or (B) defrauded more than one victim.  The district court invoked this provision and increased Melvin's offense level by two levels.  The district court also cited the number of victims in its decision to depart from the Guidelines.  Melvin argues that the district court consequently departed on the basis of a factor already considered under the Guidelines.

The application notes in the commentary to § 2F1.1 specifically provide that "victim" for purposes of  subsection (b)(2)(B) "refers to the person or entity from

which the funds come directly." U.S.S.G. § 2F1.1, comment. (n.4). Therefore, under § 2F1.1(b)(2)(B) , the multiple victim adjustment accounted solely for the two financial institutions and the telephone provider that Melvin defrauded. The § 2F1.1 multiple victim adjustment did not consider the indirect victims, the children and their families, who suffered because of Melvin's scheme.

As noted, a sentencing court may depart on the basis of a factor not addressed by the Sentencing Commission if the court determines that the factor takes the case out of the Guideline's heartland after considering the "'structure and theory of both the relevant individual guidelines and the Guidelines taken as a whole.'" *See Koon,* 518 U.S. at 96 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir. 1993)). The application notes to § 2F1.1 direct that "[i]n cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted." U.S.S.G.. § 2F1.1, comment. (n.11). The notes further provide, "[i]n the case of an offense involving false identification documents or access devices, an upward departure may be warranted where the actual loss does not adequately reflect the seriousness of the conduct." U.S.S.G.. § 2F1.1, comment. (n.12).

With the exception of those listed factors that may never serve as a basis for departure, the Sentencing Commission did not "limit the kinds of factors, whether

or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch.1, Pt. A, intro. comment. 4(b). The number of indirect victims is not a factor prohibited by the Guidelines and was available as a basis for departure.

Upon reviewing the evidence and hearing the testimony in this case, the district court determined that the Guidelines failed to consider the harm Melvin inflicted on the children and their families. The structure and theory of the relevant guideline in this instance directs the court to depart when the applicable guideline section fails to account for the harmfulness or the seriousness of the offense. Following this mandate, the district court properly departed from the Guidelines based on the extensive number of indirect victims not considered by the Guidelines.

## B. Vulnerable Victims

At sentencing, the district court adjusted Melvin's total offense level upward by two levels pursuant to U.S.S.G. § 3A1.1 because of the vulnerable nature of Melvin's victims.[1] The district court subsequently cited the vulnerability of the

---

[1] The Application Notes in the Commentary to § 3A1.1 provide that "'vulnerable victim' means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal

11

victims as a basis for departing from the Guidelines and substantially increased

Melvin's offense level.  The court noted that Melvin's victims were "infants each

one, hospitalized and presumably ill or otherwise frail and tender, in addition to

being of tender years, unable to act in the preservation of their own interest. . . .

These victims are in effect especially vulnerable because they are, by the nature of

their hospitalization and their frailty, captive victims."  Melvin argues that because

the vulnerability of his victims was considered by the Guidelines, the sentencing

court erred in departing on the basis of this factor.

Inclusion of a factor in the Guidelines calculation does not proscribe

departure based on consideration of the factor.  A sentencing court may depart

based on a considered factor if the factor is "present to an exceptional degree or in

some other way makes the case distinguishable from an ordinary case where the

factor is present."  *See Koon*, 518 U.S. at 96.

In the instant case, the district court found Melvin's offense was

"exceptional" and "distinguishable from an ordinary case."  The court stated:

> I find the offense to be so reprehensible that — which may not change
> its penal nature at all — but morally it is so reprehensible and
> gravitates at or near the very bottom of the rung of human behavior
> that I have had occasion to see.  I think that the fellow who continued

conduct."  U.S.S.G. § 3A1.1 comment. (n.2).  Consequently, § 3A1.1 encompasses a broader range of "victims" than § 2F1.1(b)(2)(B).

when, when his mother died he buried her out back and continued to take her social security checks was lower, but we're in the same bracket, as far as I'm concerned.

The Supreme Court has recognized that district courts have an institutional advantage over appellate courts in determining whether a case is exceptional or distinguishable from an ordinary case. *See Koon*, 518 U.S. at 98. A sentencing court's unique perspective enables it to determine whether a case falls outside of the heartland of cases. The Court has consequently admonished the appellate courts to avoid substituting their judgment for that of the district court in this arena. *See id.*

In the instant case, the district judge evaluated Melvin's offenses based on his day-to-day experience in criminal sentencing. From his vantage point, Judge Merryday determined that in his seven years on the bench he had only seen one case which he considered more morally reprehensible. Consequently, the district court determined that this case was both exceptional and distinguishable, and the court properly departed from the Guidelines based on the vulnerability of the victims.

## C. Reasonableness

Melvin argues that even if the factors relied on by the district court were appropriate for departure, the extent and method of the departure were

13

unreasonable. The district court departed from the Guidelines and increased Melvin's offense level from fifteen to thirty. The fifteen level departure increased Melvin's imprisonment range from 21 to 27 months to 108 to 135 months. The district judge sentenced Melvin to 120 months imprisonment.

A district court's departure from the Guidelines must be reasonable. *See Williams v. United States,* 503 U.S. 193, 202 (1992). When a sentencing court departs from the Guidelines, a reviewing court determines the reasonableness of the departure in light of the factors to be considered in imposing a sentence, as stated in 18 U.S.C. § 3553, and the reasons the district court provided for departing from the Guidelines. *See* 18 U.S.C. § 3742(e)(3).

Section 3553(a) provides that in imposing a sentence the district court must consider certain factors including the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a). In the instant case, the district court was repulsed by the nature and circumstances of Melvin's offense. The district court found that Melvin had systematically victimized over a hundred hospitalized children and their families -- victims that were weak and frail, and particularly vulnerable due to their circumstances. The district court found that due to their situations, the victims were unable to defend

14

themselves and were in fact captive victims. Upon reviewing the evidence and hearing testimony in this case, Judge Merryday proclaimed that this case was the most morally reprehensible he had encountered in his years on the bench, save one particular exception. Based on his findings, the district judge determined that a fifteen level upward departure was justified.

The Supreme Court has cautioned, "it is the prerogative of the district court, not the court of appeals, to determine, in the first instance, the sentence that should be imposed in light of certain factors properly considered under the Guidelines." *Williams*, 503 U.S. at 204. "'[I]t is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 290, n. 16 (1983)).

In the instant case, the district court sentenced Melvin to 120 months imprisonment. The statutory maximum for Melvin's offenses was 300 months.[2] In

---

[2] Melvin's violations and the statutory maximum for each violation are as follows: count one: 18 U.S.C. § 1029(a)(2), maximum term ten years; count two: 18 U.S.C. § 1029(a)(3), maximum term ten years; and count three: 42 U.S.C. § 408(a)(7)(B), maximum term 5 years. *See also* 18 U.S.C. § 3584(a) (providing for the imposition of consecutive terms).

At oral argument, Melvin's counsel argued that the grouping provisions of Chapter 3, Part D of the guidelines may restrict the sentencing court's ability to sentence Melvin to the statutory maximum terms of imprisonment available for his

light of the district court's findings regarding the nature and circumstances of Melvin's offense, we hold that a sentence of 120 months is reasonable. *See e.g., United States v. Garrison*, 133 F.3d 831, 853 (11th Cir. 1998) (departure increasing fine to statutory maximum reasonable); *United States v. Taylor*, 88 F.3d 938, 948 (11th Cir. 1996) (eight level departure was reasonable where sentence was below statutory maximum); *United States v. Nilson*, 967 F.2d 539, 546 (11th Cir. 1992) (departure reasonable where sentence was below statutory maximum).

Melvin argues that the sentencing court was required to utilize some mathematical formula to account for the departure. We have consistently rejected this argument in the past. As we have explained, "once a sentencing court begins the vertical departure on the guidelines chart, it 'need not explicitly discuss [its] reasons for bypassing incremental offense level sentencing ranges.'"[3] *See Taylor*,

---

combined offenses. However, the grouping rules only apply in sentencing pursuant to the Guidelines. Once the sentencing court departed from the Guidelines, the court was no longer bound by the grouping rules. *See United States v. Perez,* 956 F.2d 1098, 1102-3 (11th Cir. 1992) (approving Guideline departure and imposition of consecutive sentences despite grouping rules); *see also United States v. Coplin*, 24 F.3d 312, (1st Cir. 1994) (holding that when sentencing court departs from the Guidelines, maximum sentence determined by statutory maximum, not grouping rules).

[3] This court has distinguished between "horizontal" and "vertical" departures. *See Taylor*, 88 F.3d at 947. Horizontal increases are based on the relevant criminal history category applicable to the defendant. *See* U.S.S.G. Ch. 4. In a horizontal departure based on criminal history, the court departs upward by

16

88 F.3d at 948 (quoting *United States v. Dixon*, 71 F.3d 380, 382 (11th Cir. 1995)).

We have stated: "Sentencing under the guidelines is not . . . an exact science. Justice cannot be meted out according to mathematical formulas. The universe of potential factors that might affect the seriousness of the given offense is too broad to be refined in a mechanistic approach." *See United States v. Crawford*, 883 F.2d 963, 966 (11th Cir. 1989) (quoting *United States v. Mejia-Orosco*, 867 F.2d 216 (5th Cir.1989)). The purpose of the guidelines is not to "relegate the sentencing judge to the role of a scrivener whose only function is to tally the pluses and minuses prescribed in the guidelines and produce a bottom line sentence." *United States v. Weaver*, 920 F.2d 1570, 1577 (11th Cir. 1991).

We therefore conclude that both the extent and the method of the departure in this case were reasonable.

## III. Conclusion

For the reasons discussed above, the sentence is affirmed.

**AFFIRMED**.

---

increments, ultimately assigning the defendant a higher criminal history category to more accurately reflect the defendant's past criminal conduct. *See* U.S.S.G. § 4A1.3. A vertical departure, as is the instant case, is an increase based on the offense level. *See Taylor*, 88 F.3d at 947.