UNITED STATES of America,
Plaintiff,

v.

Alberto GUTMAN, Defendant.

No. 98–430–CR(S).

United States District Court,
S.D. Florida.

April 28, 2000.

Ausa Luis M. Perez, Richard Gregory, Asst. U.S. Attys., Jose A. Bonau, Miami, FL, for Plaintiff.

Howard M. Srebnick, Jose M. Quinon, Jr., Miami, FL, for Defendant.

### SENTENCING ORDER

GOLD, District Judge.

## I. Background.

A 26–count Superseding Indictment was filed in this case on May 12, 1999. On May 27, 1999, the Defendant, Alberto Gutman, pled not guilty to the superseding Indictment and the matter was set for trial. The trial started on October 18, 1999, at which time Alberto Gutman was the only defendant who had not pled guilty in this case. On the sixth day of trial, the Defendant changed his plea and pled guilty to Count One of the Superseding Indictment. Count One had charged the Defendant with conspiracy to defraud the United States Department of Health and Human Services in its administration of the Medicare Program.[1]

---

1. Count One of the Superseding Indictment charged the Defendant with conspiring to: (a) defraud the United States by impeding, impairing, obstructing and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Human Services (HHS) in the administration of the Medicare program, in

Following the guilty plea, the Probation Officer prepared a written Pre–Sentence Investigation Report ("PSR") by which she calculated the Defendant's guideline range to be 70 to 87 months; however, since the guideline range may not exceed the statutory maximum proscribed for the crime the Defendant pled to, his guideline sentence is 60 months. The PSR also set forth possible grounds for upward departure. By separate notice, the court advised that it was considering an upward departure based on those grounds.

The Defendant objected to the PSR claiming that the Probation Officer erred in calculating the amount of loss, in denying him a downward adjustment for acceptance of responsibility, and in enhancing his sentence based on his role in the offense. The Defendant further objected to the court's consideration of an upward departure, and, at the sentencing hearing held on April 12, 2000, requested that he be permitted to withdraw his guilty plea if he did not receive the sentence provided for in the Plea Agreement. He also alleged a breach of the Plea Agreement by the Government.

By this Order, I conclude that the Defendant's objections are without merit and should be denied. I further conclude that, even if one or more of the Defendant's objections were granted, thereby causing the sentence to fall below sixty months, an upward departure to the maximum sentence of sixty months is still warranted. Each of the Defendant's objections, and the basis for the court's upward departure, is addressed below.

## II. The Court's Power to Sentence Independent of the Parties Recommendations in the Plea Agreement.

The Defendant claims that the court lacks authority to impose a sentence beyond what is agreed to by the Government and the Defendant in the Plea Agreement. According to the Defendant, to do so would constitute judicial "overreaching." [2] He also claims that it denies him the basis of his bargain with the Government. By his argument, the Defendant misapprehends the essential function of the judiciary in sentencing. He also patently ignores the clear terms of his Plea Agreement.

■ The United States Sentencing Reform Act of 1984 and the United States Sentencing Guidelines have created a structure under which the sentencing court retains the ultimate authority to determine the appropriate sentence in a criminal case, provided that the sentence is in conformity with the Guidelines and its inherent policies based on the essential purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation. By accepting a **non-binding** plea agreement, a court does **not** delegate its power and responsibility to the government and the defendant.[3] To the contrary, where, as here, a plea agreement includes a non-binding recommendation pursuant to Fed.R.Crim.P. 11(e)(1)(B), the sentencing court is not bound by the sentencing recommendation, and a defendant has **no** right to withdraw his or her guilty plea if the court decides not to accept the sen-

violation of Title 18 U.S.C. § 371; (b) to make false claims against HHS in violation of Title 18 U.S.C. § 287; (c) to commit wire fraud, in violation of Title 18, U.S.C. § 1343, and (d) to pay kickbacks in return for purchasing and providing services which were paid for in whole or in part by the Medicare program of HHS, in violation of Title 42 U.S.C. § 1320a–7b(b)(1)(B) and 7b(b)(2)(B).

**2.** Defendant's counsel argues: "The reason there is a judiciary is to protect citizens from an overreaching government. It would be

ironic ... for me as a defendant to look to the government to protect me from an overreaching judiciary."

**3.** "The purpose of the guidelines is not to 'relegate the sentencing judge to the role of a scrivener whose only function is to tally the pluses and minuses prescribed in the guidelines and produce a bottom line sentence.'" *United States v. Melvin*, 187 F.3d 1316, 1324 (11th Cir.1999)(citing *United States v. Weaver*, 920 F.2d 1570, 1577 (1991)).

tencing recommendation as set forth in the plea agreement. See U.S.S.G. § 6B1.1(b).[4]

Without question, the Defendant in this case specifically acknowledged that he understood this limitation, and his Plea Agreement on this point could not have been clearer. It provided:

14. The DEFENDANT is aware that the sentence has not yet been determined by the Court. The DEFENDANT also is aware that any estimate of the probable sentencing range or sentence that the DEFENDANT may receive, whether that estimate comes from the DEFENDANT'S attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office, or the Court. **The DEFENDANT understands further that any recommendation that the United States makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The DEFENDANT under-stands and acknowledges, as previously acknowledged in paragraph 2 above, that the DEFENDANT may not withdraw his guilty plea based upon the Court's decision not to accept a sentencing recommendation made by the DEFENDANT, the government, or a recommendation jointly made by both the DEFENDANT and the government.**

Plea Agreement, Paragraph 14, page 6.

The decision to accept or reject the parties' non-binding recommendations was postponed until this court had the benefit of the Probation Officer's pre-sentence investigation and report.[5] There was a reason for this. Initially, the Defendant and the Government requested the court to accept the plea and then **immediately** sentence him **to a term certain without** the benefit of a Pre–Sentence Investigation Report. I refused to do so because the evidence presented against the Defendant at trial prior to the plea was disturbing. Frankly, I was inclined to reject the plea agreement and to allow the jury to decide the case by its verdict. If the Defendant

---

4. U.S.S.G. § 6B1.1(b) provides that: "If the plea agreement includes a nonbinding recommendation pursuant to Rule 11(e)(1)(B), the court shall advise the defendant that the court is not bound by the sentencing recommendation, and that the defendant has no right to withdraw the defendant's guilty plea if the court decides not to accept the sentencing recommendation set forth in the plea agreement." Here, in conformity with the Rule and Guideline, the court told the Defendant at the plea colloquy, and the Defendant acknowledged that he understood, that he could not withdraw his guilty plea if the court did not follow each and every one of the recommendations.

5. The Sentencing Guidelines specifically provide for this procedure. According to U.S.S.G § 6B1.1(c), "The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B) ... until there has been an opportunity to consider the presentence report ...."

Under the Sentencing Guidelines, a Probation Officer is to conduct a pre-sentence investigation and report to the court before the imposition of sentence. See U.S.S.G. § 6A1.1. By so acting, the Probation Officer acts as an arm of the court, not of the Government, and performs an important role in sentencing.

When any factor important to the sentencing determination is reasonably in dispute, the parties are given an adequate opportunity to present information to the court regarding that factor. See U.S.S.G. § 6A1.3. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided the information has sufficient indicia of reliability to support its probable accuracy. This was the process used at the sentencing hearing after the Probation Officer issued her report. To determine reliability, the court swore the Probation Officer and heard what she did and why she recommended as she did. The government agents on whom the Probation Officer relied were present at the sentencing hearing. The Defendant was given the opportunity to question them but declined to do so. The Defendant also called witnesses on his ability to pay a fine and restitution.

was found guilty of all charges, I would have been able to consider a whole range of sentencing alternatives which would have exposed the Defendant to a lengthy sentence.[6]

■ By his plea agreement, the Defendant was assured that his **maximum sentence** would be five years, even if I ultimately rejected the plea stipulations. Without doubt, this directly benefitted the Defendant by limiting his potential sentencing exposure. For this reason, I find that the Defendant's argument that he did not receive the basis of his bargain to be without merit.

Likewise, his guilty plea to one charge in the Indictment directly benefitted the Government, especially when coupled with the fact that the Defendant had to resign from his elected office as State Senator. In my view, the one remaining count reflected the seriousness of the actual offense behavior. Overall, I considered the guilty plea, subject to its terms and limitations, in the best interest of the parties; the victim, and the community.

Next, the Defendant claims that the court's consideration of an upward departure is contrary to the Plea Agreement. This argument also ignores the explicit terms of the Plea Agreement, which, in pertinent part, states that the court may depart from the applicable guideline range and impose a sentence that is more or less severe than the guidelines:

2. The DEFENDANT is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the applicable guidelines will be determined by the court relying in part on the results of a Pre–Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. **The DEFENDANT is also aware that, under certain circumstances, the Court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guideline range.**

Plea Agreement, Paragraph 2, page 2.

Moreover, in the very next paragraph of the Plea Agreement, the Defendant again acknowledges the court's power to upward depart and his inability to withdraw his guilty plea as a result of the sentence imposed. The Plea Agreement states: "... the DEFENDANT understands and acknowledges that the Court has the **authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the Defendant may not withdraw the plea solely as a result of the sentenced imposed.**" Plea Agreement, Paragraph 3, page 2. (Emphasis added).

Therefore, for these reasons, the Defendant's motion to withdraw his guilty plea because the court has not sentenced him as recommended in the Plea Agreement is denied.

### III. The Defendant's Claim that the Government Breached the Plea Agreement.

■ The Eleventh Circuit has required the government to adhere strictly to the terms of a plea agreement. *In re Arnett,* 804 F.2d 1200, 1202–03 (11th Cir.1986); *United States v. Taylor,* 77 F.3d 368, 370 (11th Cir.1996). "Thus, unlike situations involving the normal commercial contract, when a plea is made based upon prosecuto-

---

**6.** As noted by the Probation Officer in the Pre–Sentence Report, Paragraph 179, if the Defendant had been found guilty of the entire indictment, there would have been a larger effect on the possible sentence imposed. The Report stated: "The money laundering counts carry a maximum sentence of 20 years each and the guidelines also allow for consecutive sentences if necessary, to accommodate the appropriate sentence as determined by the Court. Therefore, in this case, the Court would have been able to fashion a significant upward departure." Id. at page 42. (Emphasis added).

rial promises, due process requires that the government adhere to the terms of any plea agreement that it makes." *San Pedro v. United States,* 79 F.3d 1065, 1075 (11th Cir.1996)(dissenting opinion)(citing *United States v. Pelletier,* 898 F.2d 297, 302 (2nd Cir.1990)).

The Government's obligation under the Plea Agreement to the Defendant included: (1) to jointly recommend that the court find and conclude that the relevant amount of actual, probable or intended loss is $98,174.59; (2) to support only a two-level increase in the Defendant's guideline range based on the Defendant's Obstruction of the Administration of Justice; (3) to recommend only a two-level increase because of the Defendant's abuse of a position of trust; (4) to recommend a 2 level reduction for acceptance of responsibility; (5) to recommend that no further upward departures should apply, (6) to limit criminal activity to only minimal planning, and (7) to acknowledge a sentencing range of 21 to 27 months of imprisonment and recommend a sentence of not more than 24 months.

■ The court finds that the Government has strictly adhered to each promise in the Plea Agreement, and that no breach has occurred; that is, in every pleading before the court on sentencing, and at the sentencing hearing itself, the Government has steadfastly recommended to the court that it follow the joint recommendations of the parties in the Plea Agreement and sentence the Defendant to 24 months.

■ The fact that the Government has provided information to the court and to the Probation Officer is not a breach. To the contrary, the Plea Agreement itself specifically acknowledges the Government's responsibility to do so. It states: "The United States reserves the right to inform the Court of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the DEFENDANT and the DEFENDANT'S background." Plea Agreement, Paragraph 5, page 3.

■ The government cannot agree to withhold facts from the court because this would be contrary to public policy. Where the plea agreement reserves the government's right to "fully apprise the court of the nature" of the defendant's conduct, the government may even provide information that undermines its recommendations in the plea agreement. *United States v. Schilling,* 142 F.3d 388, 396 (7th Cir.1998)(holding that in light of the government's right to "fully apprise the court" the defendants could not have had a reasonable expectation that the government would be barred from presenting evidence of the actual number of gallons of diesel fuel that went unreported). Nor does a court's failure to follow the government's recommendations constitute a breach of the plea agreement where the recommendations are not binding on the court. *United States v. Bleike,* 950 F.2d 214, 222 (5th Cir.1991)(a plea agreement will be upheld even though the court does not follow the government's recommendations); *United States v. Gaines,* 888 F.2d 1122, 1123 (6th Cir.1989)(a plea agreement's recommendations that defendant receives a two-level reduction based on his "minor participation in the offense" is not binding on the court); *United States v. Zweber,* 913 F.2d 705, 711 (9th Cir.1990), *superceded by statute on other grounds* as stated in *United States v. Webster,* 996 F.2d 209, 211 (9th Cir.1993). Similarly, there is no breach of the plea agreement where the judge, not the government, initiated the upward departure. *United States v. Merritt,* 988 F.2d 1298, 1313 (2d Cir.1993)(finding that Government's compliance with the judge's direction to provide relevant sentencing information did not violate the plea agreement).

Therefore, the Defendant's request to withdraw his guilty plea because the Government allegedly breached the Plea Agreement is denied.

### IV. The Defendant's Objections to the Probation Officer's Calculation of Loss; Role Enhancement, and Denial of Acceptance of Responsibility.

#### 1. Objections to Probation Officer's Calculation of Loss.

The Defendant claims that the Probation Officer erred in calculating the amount of loss [7] different from that established by the Plea Agreement. At the sentencing hearing, the Defendant argued that, once the Defendant and the Government stipulate to an amount of loss, the Probation Officer and the court must accept it because there no longer exists a case or controversy between the parties.

As discussed above, the clear wording of the Plea Agreement is contrary to any such understanding. The Plea Agreement acknowledges that the parties' loss calculation is not binding on the Probation Officer or the Court and is offered only as a joint recommendation.[8]

■ Moreover, the Eleventh Circuit Court of Appeal has held that reliance on a plea agreement alone to establish the amount of loss is clear error. *United States v. Strevel,* 85 F.3d 501 (11th Cir. 1996)("At sentencing, the court . . . arrived at the amount of the loss in the case simply by selecting the amount referred to in the plea agreement. The court relied on nothing else. This constituted a clear violation of plain language of the commentary [U.S.S.G. § 6B1.4(d)] . . . .").

U.S.S.G. § 6B1.4(d) provides that the sentencing court is not bound by stipulations, but may with the aid of the presentence report, determine the facts relevant to sentencing. The accompany commentary makes it clear that, "the [sentencing] court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of a sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information."

The applicable guideline to calculate the amount of loss is U.S.S.G. § 2F1.1(b)(1). Under this guideline, a defendant's sentencing range is enhanced according to the amount of loss suffered as a result of the defendant's conduct. As in theft cases, loss is the value of the money, property, or services unlawfully taken from the victim. U.S.S.G. § 2F1.1, comment.(n.8). There are, however, instances where additional factors are to be considered in determining the loss or intended loss. In cases involving a diversion of governmental program benefits, "loss is the value of the benefits diverted from intended recipients or uses." U.S.S.G. § 2F1.1, comment.(n.8(d))(emphasis added). This official commentary to the Guidelines is binding unless it is plainly erroneous or inconsistent with the guidelines. *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

■ The victim here is the United States Department of Health and Human Services though its administration of the Medicare Program. The direct loss diverted totals $843,648. Medicare paid $670,627 to Reliable and $173,021 to Real. The preponderance of the evidence [9] sup-

---

**7.** The Probation Officer determined the amount of loss at $843,648. As a result, she increased the base offense level by 11 levels. The Defendant claims the amount of loss is only $98,174.59, and that the base offense level should not be increased beyond 6 levels.

**8.** The Plea Agreement provides: " § 6. The United States and the DEFENDANT agree that, although not binding on the probation office or the Court, they will jointly recommend that the court find and conclude that

the relevant amount of actual, probable or intended loss under Section 2F1.1(b)(1) and Section 1B1.3 of the Sentencing Guidelines resulting from the offense committed in the case is ninety-eight-thousand one hundred seventy four dollars and fifty nine cents ($98,-174.59)." (emphasis added).

**9.** Where statements in the presentence report are not objected to, the district court may rely on them despite the absence of supporting evidence. *United States v. Hedges,* 175 F.3d

ports the conclusion that the Medicare monies were not used for their intended purposes; that is, they were not used by Real and Reliable to provide authorized services for the intended recipients.[10] No offset from the gross amount is required because the victim did not receive a benefit from the monies paid to Real or Reliable.[11]

■■■■ For purposes of determining loss under U.S.S.G. § 2F1.1(b)(1), the loss need not be determined with precision. See U.S.S.G. § 2F1.1, comment.(n.8). The court need only make a reasonable estimate of the loss, given the available information. *Id.* at comment.(n.9). The Defendant claims that his "gain," namely his profit, equals the amount of the loss. The court rejects this argument. According to the Guidelines, "[t]he offender's gain from committing the fraud is an alternative estimate that ordinarily will **underestimate** the loss." *Id.* (emphasis added). Otherwise stated, it is an "alternative method" or "proxy" of calculating loss when the true loss is not directly or readily measurable. *United States v. Kopp,* 951 F.2d 521, 530 (3rd Cir.1991); *United States v. Burns,* 162 F.3d 840, 854 (5th Cir.1998)(rejecting gain where defendant did not show amount of loss was difficult to determine); *United States v. Velez,* 113 F.3d 1035, 1038 (9th Cir.1997)(noting that "[D]efendant's gain is relevant only to the extent it re-

flects a victim's loss"); *United States v. Andersen,* 45 F.3d 217, 221 (7th Cir. 1995)(same). Here, the entire loss is readily calculable, and the Defendant's gain or profit underestimates it.

■■■ The diversion of funds from legitimate uses in the Medicare program adversely impacts on all Americans. It cheats taxpayers who ultimately must bear the financial burden of misuse of funds, and it diverts from those most in need, the nation's sick and elderly, scarce program dollars that were intended to provide vitally needed quality health services. Where, as here, there is a diversion without authorized benefit to the victim or the intended recipients, the loss represents the total sum paid to Real and Reliable and the Defendant is thereby held accountable.

### 2. The Defendant's Objection to Role in the Offense.

■■■ The Defendant acknowledges in the Plea Agreement that he should receive a two-level increase in his guideline range because the criminal activity underlying his offense of conviction involved more than minimal planning. The Probation Officer disagreed that the Defendant's role in the offense was so limited and enhanced for aggravating role by four levels because she determined the Defendant to be an

---

1312, 1315 (11th Cir.1999). Here, the Defendant's activity is set forth in substantial detail in the PSR without objection. Except for minor corrections, the Government has indicated that the offense section of the PSR accurately recounts the history of their investigations and findings. The Defendant objects to the amount of loss attributable to him in Paragraph 99 of the PSR, but, other than in a letter outlining some clarifications on facts, does not specifically object to §§ 56–57 which is the loss calculation, or §§ 86 or 90.

10. The Defendants provided some of their clients with home cleaning services and food items as an enticement, however, these items and/or services are not provided or billable under Medicare. PSR, § 91. In addition, the Defendant is responsible for all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully

caused by him, as well as those acts and omission of others that were reasonably foreseeable in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(A) and (B). Here, the Defendant was directly involved in the formation of Reliable and Real for the purpose of committing the Medicare fraud, was personally tied to the fraudulent billing of Medicare through Reliable and Real, and his actions included the recruitment of his wife and others to assist him in this endeavor. As such, he is responsible for the losses associated with these companies, even if he did not personally submit the bills or have day-to-day control over the amount being billed.

11. It is immaterial whether how much of the total sum was spent by the Defendant or his co-conspirators because the Defendant is held accountable for the total sum diverted.

organizer or leader of a criminal activity that involved five or more participants.

The conspiracy in this case involved more than five participants in addition to the Defendant. It included Susan Regueiro and Leopoldo Perez who were charged and convicted in the other related Mederi Medicare conspiracy case; the Defendant's wife, Marcie Gutman; Maricela Maury Prieto; Maria Maury, and Kiki Burger, who was a nominee used to cover the Defendant's interest in, and receipt of money from, Reliable.

The preponderance of the evidence establishes that the Defendant was an organizer/leader in the conspiracy. Once he was introduced to the Medicare conspiracy by Susan Regueiro and Leopoldo Perez, he demanded his own participation as a quid pro quo for his political support of a second Certificate of Need for Mederi.[12] He then organized his participation in the con-

spiratorial structure by personally soliciting other co-conspirators, organizing the corporations and selecting the nominees, and negotiating the attachment to the Mederi billing structure. Although he was not involved in the day-to-day operations, he controlled the important decision-making for his group. The Defendant hid his interest in the corporations and established nominees, like his wife, Maria Maury and Kiki Burger, to cover his interest and receipt of money from these entities. Accordingly, the four level enhancement is affirmed.

### 3. The Defendant's Objection That He was Denied a Two–Level Decrease for Acceptance of Responsibility.

■ The Probation Officer declined to include a two-level decrease for acceptance

---

**12.** The trial testimony [Transcripts of October 25, 1999, October 30, 1999] establishes that the Mederi medicare fraud involved Susan Regueiro and Leopoldo Perez. They needed subcontracting nursing groups who controlled medicare patients to carry out the fraud. They formed such groups and held ownership by nominees. Through the middle of 1990 until the end of 1992 they formed approximately 100 such nursing groups. In the meantime, Mederi needed a second certificate of need which is issued by the State of Florida. Reguerio and Perez learned that Maricela Maury was able to provide not only patients, but a good "political source" to assist with the certificate of need. The source was Alberto Gutman who, at that time, was a member of the Florida House of Representatives. A luncheon meeting was arranged where the Defendant, Ms. Maricelita Prieto [Maricela Maury's daughter], Susan Reguiro and Leopoldo Perez were present. At that meeting, Regueiro and Perez explained the nature of the Medicare fraud to the Defendant. He expressed his desire to form a new nursing group which was agreed to by Perez and Regueiro, and that the group was to be run by Ms. Preto because of her experience with an existing group.

Perez testified that he and Regueiro typically would receive a "piece" of the new group named "Reliable." In this case, they did not because it was more important for them to have the Defendant "on their side" for his political influence in the process to obtain the certificate of need. Regeiro told the nursing

groups in which they had participation to write campaign contributions to the Defendant.

When the State Inspector arrived for the CON inspection, the Defendant was present throughout the whole inspection. The Defendant asked the inspector his name, position, where he was working in Tallahassee, who his supervisors were and the like. The Inspector approved the inspection, subject to a list of deficiencies to be corrected before the CON could be issued. There was supposed to be another inspection to determine if the deficiencies were corrected, but the reinspection never occurred and the CON was issued. Perez assumed that the Defendant assisted in their obtaining the CON without reinspection because the inspector never reappeared. In the court's view, the Defendant used his political influence in exchange for his participation in the fraud without the usual "kickback" in ownership or profits.

The Reliable fraudulent scheme was so successful that the Defendant wanted to create a new group to be named "Real Nursing Services." To increase the number of patients, the Defendant intended to use telemarketing based on his previous political campaign lists since many of the voters were elderly people and beneficiaries of Medicare. At a meeting between Regueiro, Perez and the Defendant, they talked about depositing the cash that was left after expenses in banks outside the United States.

of responsibility in her calculation of the total offense level. The Defendant claims that this constitutes error because he pled guilty during trial and read a "detailed statement" admitting to his criminal activity and culpability. He further claims that the statement was approved by the Government. Within 24 hours, he then re-signed his Florida Senate seat. Notwithstanding, the Defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea in order to establish his entitlement to a downward adjustment in his offense level based on his acceptance of responsibility. *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir.1999).

U.S.S.G. § 3E1.1 provides that if a defendant clearly accepts responsibility for his offense, his offense level should be decreased by two-levels. In considering whether a defendant qualifies for this adjustment, the court may, among other matters, consider a voluntary resignation from the office or position held during the commission of the offense. U.S.S.G. § 3E1.1, comment.(n.1(f)).

Here, the Defendant pled guilty well into the trial and did immediately resign from public office. But, more than a year prior to trial, he had negotiated a guilty plea with the Government where he attached the same written statement of contrition as he announced during his plea at trial. By this earlier statement, he admitted his involvement with the Medicare fraud. Nonetheless, he declined to sign the plea agreement. Once he was indicted, he proclaimed his innocence and ran for, and was re-elected to, the State Senate, the same office he resigned under the subject Plea Agreement. He then put the Government to its burden of proof at trial for six days by denying the essential elements of guilt.

■ Of course, a plea during trial does not automatically preclude a defendant from consideration of a reduction. Rather, it is merely a factor for the court to consider in conjunction with other factors, includ-ing whether, and the extent to which, the Defendant has truthfully admitted the conduct comprising the offense of conviction.

The Court agrees with the Probation Officer that the Defendant's statement is incomplete. The Defendant does not acknowledge having established Reliable and Real for the sole purpose of defrauding the United States. He admits to using his wife's name for the purpose of receiving illicit funds, but he did not acknowledge having used his friend, Mr. Berger's name, or having personally recruited his wife into the conspiracy, as well as Maria Maury. He also fails to acknowledge the fact that he ran for reelection knowing he was guilty of the Medicare fraud.

There are other reasons as well to deny acceptance of responsibility. The Defendant admits in Paragraph 8 of the Plea Agreement to willful obstruction of justice or attempted obstruction of the administration of justice during the investigation or prosecution of the instant offense. As recognized by the Eleventh Circuit, "'An adjustment ... for acceptance of responsibility is not warranted when a defendant's conduct results in an enhancement for obstruction of justice.'" *United States v. Arguedas*, 86 F.3d 1054, 1059 (11th Cir.1996)(citing *United States v. Kramer*, 943 F.2d 1543, 1547 n. 4 (11th Cir.1991))(citing U.S.S.G. § 3E1.1, Application Note 4), *cert. denied*, 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992).

Under U.S.S.G. § 3E1.1, comment.(n.4), conduct resulting in an obstruction of justice enhancement ordinarily indicates that a defendant has not accepted responsibility for his criminal activity. There may be, however, extraordinary cases in which an adjustment for acceptance of responsibility may still apply. This case, however, is not one of them. As indicated later in this Sentencing Order, this Defendant has engaged in repeated acts of obstruction over a five-year period of time warranting an upward departure. Under such circumstances, no "extraordinary" reason war-

rants a downward adjustment here, especially when coupled with the fact that the Defendant has not complied with the Probation Officer's request for full financial disclosure.[13]

## V. Basis for Upward Departure.

### 1. Reason for Consideration of Upward Departure Given PSR Guideline Range.

■ Based on a total offense level of 27, and a criminal history category of I, the Defendant's guideline imprisonment range is 70 to 87 months; however, the maximum incarceration term permitted by law is 60 months for the crime for which the Defendant entered his guilty plea. See U.S.S.G. § 5G1.1(a). Accordingly, the court may not impose a sentence beyond the statutory permitted maximum of 60 months.

The Defendant challenges the Probation Officer's calculation of the guideline range and argues that his sentence, under his calculation of the Guidelines, as supported by the Government, should not exceed 27 months. For reasons stated above, the court rejects this position and concludes that a higher guideline sentence is legally and factually appropriate. Should the Eleventh Circuit determine that this court's reasoning is in error, I still would employ an upward departure to impose a sentence outside the guidelines under applicable law to reach the same result; that is, a maximum sentence of 60 months.

### 2. Applicable Law.

The Eleventh Circuit recently has articulated the law governing upward departures in *United States v. Melvin*, 187 F.3d 1316, 1320–1321 (11th Cir.1999). In upholding an upward departure based on vulnerable victims because the factor was present to an exceptional degree, the court stated:

A district court must impose a sentence within the Sentencing Guidelines unless the court determines "that there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." § 18 U.S.C. § 3553(b).

The Guidelines Manual explains:

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where the conduct significantly differs from the norm, the court may consider whether a departure is warranted. U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b).

Before departing from the Guidelines, a district court must therefore determine that an aggravating factor exists that places the case outside of the Guidelines' heartland. See *Koon*, 518 U.S. at 98, 116 S.Ct. 2035, 135 L.Ed.2d 392. Whether a case is unusual enough to fall outside of the heartland is determined in large part by comparison with other Guidelines cases. See *id.* Because the district courts see so many Guidelines cases, district courts have an institutional advantage over appellate courts in determining whether a case is outside the heartland, and thus their decisions are entitled to substantial deference. See *id.*

The examination of whether a factor is an appropriate basis for departure is limited to (1) whether the Sentencing

---

**13.** Even if the Defendant was correct regarding a two level adjustment for acceptance of responsibility, and only a 2 level enhancement for role in the offense, his total base offense level would be 23 resulting in a guideline range from 46 to 57 months. A high end sentence at 57 months is three months less than his 60 month sentence. A 25 total base offense level results in a 57 to 71 month range.

Commission has prohibited consideration of the factor in departing from the Guidelines, and (2) whether the factor as occurring in the particular instance takes the case outside of the heartland of the applicable guideline. See *id.* at 109, 116 S.Ct. 2035, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392.

If a factor is forbidden, see e.g., U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion, and socioeconomic status), a district court cannot use the factor to depart. See *id.* at 96–97, 116 S.Ct. 2035, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392. If a factor is encouraged, see e.g., U.S.S.G. § 5K2.1 (offense causes death), a court may depart on the basis of the factor unless the Guidelines already take the factor into account. See *id.* at 96, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392. If a factor is discouraged, see e.g., U.S.S.G. § 5H1.2 (education and vocational skills), or is an encouraged factor already taken into account by the applicable guideline, see e.g., U.S.S.G. § 5K2.7 (disruption of governmental function in bribery offense), the court may depart only if the factor is "present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present." See *id.* A sentencing court may depart on the basis of a factor not addressed by the Sentencing Commission if the court determines that the factor takes the case out of the Guideline's heartland after considering the "'structure and theory of both the relevant

individual guidelines and the Guidelines taken as a whole.'" See *id.* (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993))

### 3. Basis for Upward Departure.

 Applying *Melvin*, I conclude that two factors warrant an upward departure. The first is a departure for extraordinary obstruction of justice. The second is a departure for flagrant breach of the public trust. These two factors work in combination to such an exceptional degree as to make this case distinguishable from an ordinary case where the factor is present, and to otherwise take the case out of the Guidelines' heartland. Each factor is discussed separately below.[14]

### 1. Extraordinary Obstruction of Justice

The Defendant has admitted in his Plea Agreement that he should receive a two-level increase based on obstruction of justice pursuant to U.S.S.G. § 3C1.1, because he wilfully obstructed or attempted to obstruct justice during the investigation or prosecution of the instant offense. [Plea Agreement, Paragraph 8]. The Probation Officer included a two-level enhancement in the PSR for obstruction of justice. PSR ¶ 104, but suggested that a two-level enhancement for a single act of obstruction fails to account for the Defendant's repeated acts of obstruction. See PSR, § 170. The Probation Officer concluded:

"A review of the information addressed previously in the Offense Conduct sec-

---

14. The Probation Officer has brought to the court's attention that there exists a possible ground for downward departure; that is, the severe medical problems of the Defendant's youngest daughter. The Defendant's family ties are, however, a discouraged factor under the Sentencing Guidelines and are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. U.S.S.G. § 5H1.5. See *United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir.1992)(citing *United States v. Brewer*, 899 F.2d 503, 507 (6th Cir.)), *cert. denied*, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95

(1990)("[U]nfortunately, it is not unusual for innocent young family members, including children ... to suffer as a result of a parent's incarceration.") Notwithstanding, the court has taken this situation into account in my lenient sentencing of the Defendant's wife. I did so to be sure that at least one parent would be at home to care for the minor child's severe needs. Notwithstanding, it defies ordinary understanding, given these family circumstances, why the Defendant would have placed his family at further risk by recruiting his wife to participate in the conspiracy.

tion contains references to Mr. Gutman's attempts to avoid detection in this case, as well as actual obstruction of federal officers and the grand jury. His attempts to obstruct the investigation spanned a five-year period and include numerous attempts to tamper with witnesses, have documentation withheld, intimidate potential witnesses with threats and/or promises of assistance, as well as lying to investigating officials."

PSR, § 92.

■ Inclusion of a factor in the Guidelines' calculation does not proscribe departure based on consideration of the factor. *United States v. Melvin*, 187 F.3d at 1322. "A sentencing court may depart based on a considered factor if the factor is 'present to an exceptional degree or in some way makes the case distinguishable from an ordinary case where the factor is present.' " *Id.* (citing *Koon*, 518 U.S. at 96, 116 S.Ct. 2035).

In the instant case, the nature of the Defendant's extensive course of obstruction is set forth in the PSR at §§ 58 through 73.[15] The two-level enhancement for obstruction is insufficient to address the exceptional degree to which the Defendant engaged in obstructive attempts, over a five-year period, to tamper with witnesses, have documentation withheld, intimidate potential witnesses with threats and/or promises of assistance, as well as lying to investigating officials, all while holding high public office in the State of Florida. As such, this is no ordinary case of obstruction. The number, quality, and duration of the obstructive acts simply take it out of the Guidelines' heartland and warrant an upward departure.

### 2. Breach of Public Trust.

In his Plea Agreement, the Defendant also has admitted to abusing a position of public trust, specifically his position as a Florida State Representative in a manner that significantly facilitated the commission of the conspiracy offense in this case. [Plea Agreement, Paragraph 9]. As such, he received a two-level enhancement under U.S.S.G. § 3B1.3. The evidence at trial supports this enhancement. The Defendant, while serving as a member of the Florida House of Representatives, was brought into the conspiracy for the purpose of influencing governmental officials to issue a second Certificate of Need for Mederi. He abused his position of public trust by accomplishing this task. In exchange, the Defendant was permitted to join the conspiracy and to establish his own fraudulent nursing groups, without the usual kickbacks to the main participants. Once the companies were formed, he used his elective office to facilitate the Medicare fraud. He used his voters' lists to make calls to the elderly and the infirm so as to secure names and information for fraudulent patient lists, while he solicited votes for his upcoming election.

Through the "Abuse of Trust" sentencing provision, society discourages similar conduct by punishing with greater severity those who use their position of trust to commit crimes. This purpose is served by enhancing the sentences of public officials who abuse the power entrusted to them.

This case involves an additional factor not addressed by the Sentencing Commission, although it is related to the structure and theory of the "Abuse of Trust" and

---

15. The Defendant's counsel, Mr. Quinon, wrote to the Probation Officer on April 4, 2000 to set forth his position relative to what was included on various tapes which the Government provided to the Probation Officer and upon which she based her findings. Mr. Quinon's comments do not specifically contest any particular paragraph of the PSR such as to constitute a formal objection requiring the production of evidence in support. Rather, they are offered in the interest of presenting a fair report. Moreover, I do not find that Mr. Quinon's comments, even if all true, substantively affect the Probation Officer's factual findings which the Government accepts as true. For this reason, the Probation Officer's findings, as included in Paragraphs 58 through 73, are accepted for purposes of the court's upward departure.

"Obstruction" enhancements and the Sentencing Guidelines taken as a whole.[16] The factor is "breach of the public trust."

Public officials owe a duty of trust to the public who empowered them. When a public official commits a crime while in public office, our societal interests are clearly harmed by the consequential public loss of confidence in our democratic system of government.[17] While reprehensible, such a breach of the public's trust does not always warrant an upward departure. But there are instances, such as this case, where the harmfulness or the seriousness of the breach of public trust is so flagrant and extraordinary as to warrant further punishment.

With Mr. Gutman, we have a public official who continued to run for, and hold, public office after he conspired to, and did, defraud Medicare, and while he was actively engaging in a five-year effort to obstruct justice in order to avoid prosecution and the loss of his public office. He ran for, and was re-elected to, the Florida State Senate in 1998 after having admitted to the Government his involvement with the Medicare fraud in a confidential plea agreement. Once indicted, he proclaimed his innocence to the public and blamed the Government for false charges. He carried out his obstruction and perpetuated his public lies while he served the State of Florida in various important committee assignments that were inextricably intertwined with his relevant criminal conduct; namely, those concerning the elderly, long term care, finances, appropriation, regulated services, as well as Health and Rehabilitation (Health Care Reform). Most astounding, while engaged in his obstruction, he even chaired the Florida Senate's Criminal Justice Committee.

We, as a society, abhor such callous disregard of our trust. It shakes our belief in our representative form of government to the core. When it occurs in such a systematic and pervasive manner, it is incumbent upon the sentencing court to act beyond the interests of the individual defendant and the government as memorialized in a plea agreement, and to consider further, and apply, the basic purposes of criminal punishment, namely just punishment and deterrence. For deterrence purposes, the punishment should be clear enough to discourage similar reprehensible actions from those who are inclined to

16. In considering the structure of the Guidelines, the court also notes U.S.S.G. § 2C1.1's commentary which states: "[w]here the court finds that the defendant's conduct was part of a systematic or pervasive corruption of a government function, process, or office that may cause loss of public confidence in government, an upward departure may be warranted." U.S.S.G. § 2C1.1, comment. (N.5). While this guideline section addresses bribes, its intent applies by analogy to a breach of public trust not specifically provided for by the Guidelines. Here, the Defendant's actions also has disrupted the orderly process of an essential governmental function, namely, the administration of the Medicare Program. As such, an upward departure may have been warranted as well under U.S.S.G. § 5K2.7.

17. The court may take judicial notice of public reaction to this case and consider it in making its decision to depart from the Sentencing Guidelines. See United States v. Shenberg, 89 F.3d 1461, 1476–77 (11th Cir. 1996). The court takes judicial notice that the Defendant steadfastly declared his innocence and publicly argued that his indictment was politically motivated. After his narrow 1998 electoral victory, the Defendant said, "Voters saw through it. I thank God and the voters for having the faith they've had in me." Gutman Wins Despite Charges, Florida Today, WL 18649992 (November 4, 1998). The wide-spread publicity about this Defendant is well-known in this community. The court, with regret, notes as well the public's increasing cynicism over corruption at all levels of government. Given the crucial function of the Legislative Branch in passing the laws that govern us all, it is self-evident that the Legislature cannot function properly, nor will the people follow the rule of law, if our citizens and residents continue to loose respect for, and confidence in, our democratic system. See United States v. Gunby, 112 F.3d 1493, 1502 (11th Cir.1997)("The most basic function of the court system is to promote the rule of law, which cannot function properly if the people lose respect for, and confidence in, the judiciary.")

disregard their fundamental responsibilities to the public who empowered them.

## VI. Imposition of a Fine.

 The Sentencing Guidelines mandate that the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a). The defendant bears the burden of demonstrating his present and prospective inability to pay a fine. *United States v. Garrison*, 133 F.3d 831, 849 (11th Cir.1998)(citing *United States v. Hairston*, 46 F.3d 361, 376 (4th Cir.1995)). Here, the Defendant has frustrated the court's ability to assess his financial condition by refusing to provide requested financial information to the Probation Officer. On this basis alone, a fine may be imposed. *See United States v. Tocco*, 135 F.3d 116 (2nd Cir.1998)(upholding a fine where the defendant refused to disclose financial information); *Hairston*, 46 F.3d at 376–77 (holding that a defendant "cannot meet his burden of proof by simply frustrating the court's ability to assess his financial condition"); *United States v. Martinez*, 151 F.3d 384, 395–396 (5th Cir.1998)(holding that the defendant failed to prove inability to pay a fine, because he failed to return the *Personal Financial Statement to the probation officer)*; *United States v. Soyland*, 3 F.3d 1312, 1315 (9th Cir.1993)(holding that by refusing to provide financial information to the probation officer, the defendant failed to carry her burden of showing an inability to pay a fine).

After a sentencing court determines that a fine is appropriate, it then is required to consider seven factors in setting the amount of the fine, including the evidence presented as to the defendant's ability to pay. *See Garrison*, 133 F.3d at 849 setting forth the factors. Although the Government believes that the Defendant has hidden assets, no proof was offered to sustain that conclusion. In assessing the matter, the Probation Officer indicates that he is unable to pay a fine at this time, in light of the fact that he has two small children at home and there is an outstanding commitment to pay restitution.

In the normal case, I would simply accept the Probation Officer's recommendation. But here, a substantial sum of money was paid by Medicare to Real and Reliable that was never accounted for or explained. While the Defendant's father claims he has paid for all the Defendant's expenses, a sufficient accounting has not been offered to prove this, let alone to explain where the significant sums have come from to pay for the Defendant's attorneys. Given the Defendant's past record of obstruction, I do not find the Defendant's claim of inability to pay to be credible, particularly when coupled with his refusal to provide all necessary financial information to the Probation Officer. On balance, a fine is required to reflect the seriousness of the offense, to promote respect for the law, to provide punishment and to afford adequate deterrence. The amount of fine shall be announced at the time of the imposition of sentence.

**WHEREFORE,** it is **ORDERED** that the Defendant's objections to the Pre–Sentence Report are **DENIED**; that his *ore tenus* motion to withdraw his plea is **DENIED,** and that an upward departure to 60 months, as initiated by the court, is **GRANTED** in the event the Defendant's sentence is reduced on appeal.