[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11641
Non-Argument Calendar

_____

D. C. Docket No. 05-00044-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARREN LAVON SMILEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(January 16, 2008)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Darren Smiley appeals his conviction and sentence for possession of a

firearm by a convicted felon.  He raises the following issues: (1) whether the

evidence was sufficient to support his conviction; (2) whether the court properly

determined his status as a armed career criminal; (3) whether he possessed the firearm in connection with a crime of violence; and (4) whether the court abused its discretion by departing upward in his sentence. After a thorough review of the record, we affirm.

## I. Background

According to the testimony at trial viewed in the light most favorable to the government, convenience store night employee Katherine Kersker was accosted by a masked man while she took empty boxes to the storage unit behind the store at about 3:15 am on October 14, 2004. The exterior of the building was well-lit, but the inside of the storage unit was dark. Kersker could not see the assailant's entire face, as it was partly covered by a bandana, but could identify the man as Smiley by his eyes.[1] Smiley carried a gun, forced Kersker into the storage unit and demanded she perform oral sex on him. He struck her in the head with the gun and threatened her. He instructed her to remove her pants, but abandoned this idea when she told him she had a "problem." Smiley then took Kersker's money, locked her in the storage unit, and fled. Police discovered Smiley, his jacket, and the gun in a nearby utilities substation a few hours later as the result of an anonymous call. The bandana was not found until a second trip to the substation

---

[1] Kersker also stated that she knew Smiley because he had visited the store many times until he was barred from the store.

2

after Smiley had been taken into custody.

Smiley at first denied his participation, but later admitted that he had robbed Kersker. Although he further admitted leaving the jacket and gun at the substation, he denied pointing a gun at Kersker, or that he sexually assaulted her. Police did not obtain fingerprint or DNA analysis of the gun or the bandana.

An ATF investigation confirmed that the firearm had been manufactured in Arkansas and was found in Alabama. In an interview with an ATF agent about two weeks after his arrest, Smiley admitted his possession of the firearm and his role in the robbery. The jury convicted Smiley.

In preparing the presentence investigation report ("PSI"), the probation officer determined that Smiley qualified as an armed career criminal under U.S.S.G. § 4B1.4(a) and 18 U.S.C. § 924(e) based on his three prior drug convictions. Under this provision, Smiley's adjusted offense level was either 33 or 34, with the higher level applicable if Smiley used or possessed the firearm in connection with a crime of violence. The probation officer cited the robbery and sodomy as crimes of violence under § 4B1.4(b)(3)(A). Status as an armed career criminal also increased Smiley's criminal history category to VI, resulting in a guidelines range of 262 to 327 months' imprisonment.

The government objected to the failure to recommend an upward departure

3

due to the extreme nature of the offense, U.S.S.G. § 5K2.8. Smiley objected both on his own and through his attorney. Smiley's pro se objections related to whether he was innocent of the offenses and whether his arrest warrant had been issued properly. The counseled objections challenged the armed career criminal status and the enhancement for possession of a firearm during a crime of violence. The court overruled all of Smiley's objections and agreed with the government that an upward departure was warranted in light of Kersker's age, the forced sodomy, the threats and robbery, and the fact that Smiley locked her in the storage unit. As a result, the court departed upward to a total adjusted offense level of 36, which corresponded to a guidelines range of 324 to 405 months' imprisonment. The court sentenced Smiley to 360 months' imprisonment, to run concurrently to any sentence to be imposed in the pending state court cases for robbery and sodomy. Smiley now appeals.

## II. Discussion[2]

---

[2] Smiley also reasserts the pro se objections to the PSI that he raised at sentencing. To the extent that Smiley challenges his convictions, the court properly concluded that it would not consider untimely motions to suppress or allegations of illegal detention at the sentencing phase. Under Fed. R. Crim. P. 12(b), motions to suppress must be made prior to trial, and the failure to do so constitutes waiver of the objection. Fed. R. Crim. P. 12(b)(3)(C), (e). Although the court may grant relief from the waiver upon a showing of good cause, Fed. R. Crim. P. 12(e), Smiley does not argue that he has established good cause. To the extent that Smiley argued ineffective assistance of counsel, that issue is not proper for consideration on direct appeal where, as here, the record is not sufficiently developed. See United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005). To the extent that Smiley challenged his sentence, the court properly determined Smiley's sentence for the reasons discussed below.

We review "de novo the legal question of whether the record contains sufficient evidence to support a guilty verdict [and] . . . view the evidence in the light most favorable to the government [,] ... resolv[ing] all reasonable inferences and credibility evaluations in favor of the jury's verdict." United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) (internal quotation marks and citations omitted). We review the district court's application of the sentencing guidelines de novo and reviews its factual findings only for clear error. United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005). Constitutional challenges to a sentence are also reviewed de novo. United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005). We review departures from the Sentencing Guidelines under the abuse of discretion standard, giving the district court's determination "substantial deference." United States v. Melvin, 187 F.3d 1316, 1320 (11th Cir. 1999); see also Gall v. United States, 128 S.Ct. 586 (2007); Koon v. United States, 518 U.S. 81, 96-100, 116 S.Ct. 2035, 2046-47, 135 L.Ed.2d 392 (1996).

### 1. Sufficiency of the Evidence

To establish possession of a firearm by a felon under 18 U.S.C. § 922(g)(1), the government must prove that "'the defendant was (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate

5

commerce.'" United States v. Glover, 431 F.3d 744, 748 (11th Cir. 2005) (quoting United States v. Hall, 77 F.3d 398, 402 n.4 (11th Cir. 1996)).

With respect to the second and third elements, the government submitted certified copies of the prior convictions, which was sufficient to establish that Smiley was a convicted felon. And an ATF agent testified that the firearm was manufactured in Arkansas and found in Alabama, which established the interstate nexus. United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001). Thus, the only issue is whether there was sufficient evidence to establish Smiley possessed the firearm.

"Possession, in the context of § 922(g)(1), requires that the defendant knowingly possess the firearm, and may be proven either by showing that the defendant actually possessed the firearm, or by showing that he constructively possessed the firearm." United States v. Gonzalez, 71 F.3d 819, 834 (11th Cir. 1996) (citation omitted). "[F]or a person to have constructive possession over a firearm, the person must have both 'the intent and the power to exercise dominion and control over the [firearm].'" Id. (citation omitted).

Here, Smiley admitted that the gun found on the jacket at the substation was his. He also admitted that he had the gun in his hand when he robbed Kersker. Kersker repeatedly stated that she had no doubt the assailant was Smiley. Viewing

6

this evidence in the light most favorable to the government, there was sufficient evidence to support the conviction.

2. Armed Career Criminal Status

Smiley argues that his prior convictions did not qualify as predicate offenses under 18 U.S.C. § 924(e). He urges this court to hold this provision unconstitutional and he contends this provision is cruel and unusual punishment.

Section 924(e) - the armed career criminal act ("ACCA") - provides, "In the case of a person who violates section 922(g) . . . and has three previous convictions by any court . . . for a . . . serious drug offense . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e). In determining whether a particular offense is a "serious drug offense" under the ACCA, sentencing judges adopt a categorical approach and look only to the statutory definition of the crime charged, rather than the actual facts of the individual's prior conviction. 18 U.S.C. § 924(e)(2)(A); Taylor v. United States, 495 U.S. 575, 600-02, 110 S.Ct. 2143, 2159-60, 109 L.Ed.2d 607 (1990). The definition of a qualifying state offense under the ACCA is a matter of federal law. Id. at 590-91.

A "serious drug offense" means "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute,

7

a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii); see also U.S.S.G. § 4B1.4, comment (n.1). Smiley had been convicted of three counts of unlawful distribution of a controlled substance under Ala. Code § 13A-12-211, a Class B felony punishable by not more than twenty years.[3] Ala. Code § 13A-5-6. Thus, Smiley's prior convictions meet the definition of a serious drug offense.

To the extent that Smiley argues the court should have considered the circumstances of his prior offenses, that argument fails. As noted above, "a district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." United States v. Spell, 44 F.3d 936, 939 (11th Cir. 1995). When the face of the judgment is unambiguous, the district court should not inquire further to determine the nature of the conviction. See id.; see also Taylor, 495 U.S. at 602. Here, Smiley's offenses satisfied the definition of a serious drug offense, and the statute was not ambiguous. Thus, the court was not permitted to look at the circumstances of the prior convictions.

---

[3] Enhancement under the ACCA requires three temporally distinct crimes, but convictions need not be obtained on separate occasions. United States v. Jackson, 57 F.3d 1012, 1018 (11th Cir. 1995). "[S]o long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." United States v. Pope, 132 F.3d 684, 692 (11th Cir. 1998). Here, Smiley's prior offenses occurred on different days.

Finally, there is no merit to Smiley's claim that the enhanced sentence constitutes cruel and unusual punishment. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." Ewing v. California, 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (quotations omitted); United States v. Brant, 62 F.3d 367, 368 (11th Cir.1995). A reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions. Brant, 62 F.3d at 368. Outside the context of capital punishment, successful challenges to the proportionality of sentences are exceedingly rare. United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005). This court has held that, "[i]n general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005) (quotation omitted); accord United States v. Johnson, 451 F.3d 1239, 1243-44 (11th Cir.), cert denied, 127 S.Ct. 462 (2006).

Here, Smiley cannot show that his sentence is disproportionate. See United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000) (rejecting argument that

9

application of ACCA constituted cruel and unusual punishment where defendant's predicate offenses included three prior drug convictions, robbery, and battery). Moreover, the court's decision to impose an upward departure shows that it implicitly determined that the sentence was not disproportionate to the offenses.

### 3. Use and Possession of the Firearm, U.S.S.G. § 4B1.4(b)(3)(A)

Smiley next argues that he had not been convicted of a crime of violence at the time he was sentenced for possession of a firearm, and therefore the court erred by enhancing his sentence under § 4B1.4(b)(3)(A).

A district court's determination that a firearm was possessed "in connection with" another felony offense is a factual one. See United States v. Whitfield, 50 F.3d 947, 949 & n.8 (11th Cir. 1995) (addressing the "in connection with" phrase in U.S.S.G. § 2K2.1(b)(5)).

Under U.S.S.G. § 4B1.4(b), the offense level for an armed career criminal is, relevant to this appeal, the greatest of: the applicable offense level for the offense of conviction, 34 if the defendant possessed a firearm in connection with a crime of violence as defined in § 4B1.2(a), or 33 otherwise. U.S.S.G. § 4B1.4(b).

Here, the court determined that the applicable offense level was 30 under § 2A3.1.[4] Thus, under the ACCA, which requires the court to apply the greatest

---

[4] See United States v. Williams, 431 F.3d 767, 768 n.1 (11th Cir. 2005) (discussing the cross reference provision in § 2K2.1, which instructs the court to apply § 2X1.1 if the defendant

offense level, the minimum offense level Smiley faced was 33 under § 4B1.4(b)(3)(B). The question, however, is whether Smiley possessed a firearm in connection to a crime of violence such that his offense level should have been 34 under § 4B1.4(b)(3)(A).

Section 4B1.2(a) defines crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding on year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . .otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). As the commentary explains, crime of violence includes robbery and forcible sex offenses. U.S.S.G. § 4B1.2, comment. (n.1).

This court has held that "§ 4B1.4(b)(3)(A) applies even if the defendant was not actually convicted of the crime of violence in connection with which he possessed the firearm. Instead, the government need only prove that a crime of violence was committed in connection with the firearm possession, and that proof can be by a preponderance of the evidence." United States v. Mellerson, 145 F.3d 1255, 1258 (11th Cir. 1998).

---

used or possessed any firearm in connection with the commission of another offense and the resulting base level is higher than it would otherwise be, U.S.S.G. § 2K2.1(c)(1), and noting that § 2X1.1 in turn instructs the court to use the offense level that is the same as the underlying offense). The underlying offense, in this case, was sexual assault, § 2A3.1.

Here, Kersker testified that Smiley, holding a gun, robbed and forced her to engage in oral sex. In his own statement to police, Smiley admitted robbing Kersker and stated that he had the gun at his side at the time. This evidence was sufficient to establish, by a preponderance of the evidence, that Smiley committed a crime of violence while in possession of the firearm. See United States v. Young, 115 F.3d 834, 838 (11th Cir. 1997) (applying § 4B1.4(b)(3)(A) and concluding that Young possessed the firearm in connection with a crime of violence when he obtained the firearm during a burglary); United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997) (holding that firearm was used "in connection with" the defendant's heroin possession because the defendant had the heroin around his neck, and had placed the firearm in his pants pocket such that the weapon was readily accessible to him if he needed its protection).

4. Upward Departure

Smiley further argues that the court erred by applying an upward departure because he had not been convicted of robbery or sodomy, and the alleged sodomy and robbery did not constitute extreme, cruel, or heinous acts to support the departure given that the offense did not last very long.

A district court may depart upward from the Guidelines if it determines "'there exists an aggravating or mitigating circumstance of a kind or to a degree,

12

not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" Melvin, 187 F.3d at 1320 (citation omitted). The extent of a district court's departure from the Guidelines must be reasonable and is evaluated in light of the factors to be considered in imposing the sentence and the reasons the district court provided for departing. Id. at 1322-23. "Among the factors a sentencing court must consider are the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense." United States v. Blas, 360 F.3d 1268, 1273-74 (11th Cir. 2004).

Under U.S.S.G. § 5K2.8, "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct." U.S.S.G. § 5K2.8. This court has held that forced oral sex may be especially degrading under § 5K2.8 and that this factor is not taken into account in determining the base offense level under § 2A3.1. United States v. Lewis, 115 F.3d 1531, 1539 (11th Cir. 1997).

Here, the court did not abuse its discretion. Smiley forced Kersker to engage in oral sex and he was prepared to rape her. He threatened her, struck her with his

13

gun, and locked her in the storage closet while he escaped. Based on these actions, the court's decision that a two-level upward departure was warranted is entitled to deference.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** Smiley's conviction and sentence.